IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| JIMMY MARTIN AND LUCKY STRIKE, LLC, | ) ) ) | Civil No. 2:06-cv-400-DCN |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| REGINALD I. LLOYD, SCARLETT A. WILSON, AND ALAN WILSON, | ) ) ) | **ORDER** |
| Defendants. | ) ) ) | |
| _____ | ) | |

This matter is before the court on plaintiffs' motion for partial summary judgment and defendants' motion for summary judgment. For the reasons set forth below, plaintiffs' motion for partial summary judgment is denied, and defendants' motion for summary judgment is granted.

### I.  BACKGROUND

Plaintiffs Jimmy Martin ("Martin") and Lucky Strike, LLC ("Lucky Strike") bring this action against three South Carolina officials in their official capacities: Reginald Lloyd, Chief of the South Carolina Law Enforcement Division ("SLED"); Alan Wilson, Attorney General of South Carolina; and Scarlett Wilson, Solicitor of the Ninth Judicial Circuit, under the rubric of Ex Parte Young, 209 U.S. 123 (1908). This court has jurisdiction under 28 U.S.C. § 1331. Plaintiffs seek to enjoin the enforcement of two South Carolina statues, S.C. Code Ann. §§ 12-21-2710 and -2712, which criminalize certain "device[s] pertaining to games of chance." Plaintiffs argue that the statutes violate their rights to due process and equal protection under

1

the Fourteenth Amendment of the Constitution. The South Carolina video gaming statutes in question provide:

> It is unlawful for any person to keep on his premises or operate or permit to be kept on his premises or operated within this State any vending or slot machine, or any video game machine with a free play feature operated by a slot in which is deposited a coin or thing of value, or other device operated by a slot in which is deposited a coin or thing of value for the play of poker, blackjack, keno, lotto, bingo, or craps, or any machine or device licensed pursuant to Section 12-21-2720 and used for gambling or any punch board, pull board, or other device pertaining to games of chance of whatever name or kind, including those machines, boards, or other devices that display different pictures, words, or symbols, at different plays or different numbers, whether in words or figures or, which deposit tokens or coins at regular intervals or in varying numbers to the player or in the machine, but the provisions of this section do not extend to coin-operated nonpayout pin tables, in-line pin games, or to automatic weighing, measuring, musical, and vending machines which are constructed as to give a certain uniform and fair return in value for each coin deposited and in which there is no element of chance.
>
> Any person violating the provisions of this section is guilty of a misdemeanor and, upon conviction, must be fined not more than five hundred dollars or imprisoned for a period of not more than one year, or both.

S.C. Code Ann. § 12-21-2710. Enforcement of § 12-21-2710 provides:

> Any machine, board, or other device prohibited by Section 12-21-2710 must be seized by any law enforcement officer and at once taken before any magistrate of the county in which the machine, board, or device is seized who shall immediately examine it, and if satisfied that it is in violation of Section 12-21-2710 or any other law of this State, direct that it be immediately destroyed.

S.C. Code Ann. § 12-21-2712.

Prior to 1999, gambling statutes exempted video game machines with a "free play feature," but the statute was amended to cover these games. <u>State v. Four Video Slot Machs.</u>, 453 S.E.2d 896, 896-97 (S.C. 1995); <u>see</u> 1999 S.C. Acts 1319-23. Section 12-21-2712 entitles an owner who has had his property seized to a post-

seizure hearing before a magistrate, but no pre-seizure hearing is available. Mims Amusement Co. v. SLED., 621 S.E.2d 344, 351 (S.C. 2005).

Prior to July 2000, plaintiffs owned and operated video game machines that contained free play features whereby the players of the machines could legally redeem free game credits earned for non-machine cash payouts. Pls.' Mot. 2. Martin is a citizen and resident of South Carolina who manufactures video game machines in South America for operation in states other than South Carolina. Martin previously operated video games in the state but removed them to Oklahoma after the amendment to § 12-21-2710 because he "knew" the amendments prohibited his games. Martin wants to design and import a machine which he contends would be legal under South Carolina's video gaming statutes but is unwilling to risk criminal prosecution in order to obtain a decision on the legality of a particular video gaming device. Lucky Strike owns and operates video game machines in the state. Plaintiffs seek to enjoin the enforcement of § 12-21-2710.

## II.  STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010).[1] The party seeking summary judgment shoulders the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, the burden for summary judgment may be discharged by pointing out to the court that

---

[1] 2010 Amendments state that: "The amendments will not affect continuing development of the decisional law construing and applying these phrases." Thus, this court will continue to apply the cases decided prior to the Amendments.

there is an absence of evidence to support the nonmoving party's case. Id. at 325. The nonmovant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. The nonmovant "'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Evidence should be viewed in the light most favorable to the nonmoving party and all inferences drawn in its favor. Id. at 255. However, a mere "scintilla" of evidence will not preclude summary judgment. Id. at 252.

## III. DISCUSSION

Plaintiffs argue that § 12-21-2710 is unconstitutionally vague and its enforcement under § 12-21-2712 violates their rights to due process under the Fourteenth Amendment.[2] Plaintiffs have also augmented their due process and equal protection arguments with a legal theory based on Ex Parte Young.

### A. Void for Vagueness

Plaintiffs claim that the prohibition of "games of chance" in § 12-21-2710 violates the Due Process Clause of the Fourteenth Amendment because it is unconstitutionally vague. A statute is void for vagueness if it "fails to provide a person of ordinary intelligence fair notice of what is or is not prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." United States v. Williams, 553 U.S. 285, 304 (2008) (citing Hill v. Colorado, 530 U.S. 703, 732 (2000)); see also Village of Hoffman Est. v. Flipside, Hoffman Est.,

---

[2] Plaintiffs abandoned the claim for discriminatory enforcement at the hearing on February 1, 2011.

4

Inc., 455 U.S. 489, 498 (1982) (citing Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972)).  The central requirement of the vagueness doctrine is that legislatures establish general guidelines to govern law enforcement.  Kolender v. Lawson, 461 U.S. 352, 357-58 (1983).  A court considering a vagueness challenge must consider "[t]he degree of vagueness that the Constitution tolerates-as well as the relative importance of fair notice and fair enforcement," which, in turn, "depends in part on the nature of the enactment."  Village of Hoffman Est., 455 U.S. at 498.

Section 12-21-2710 is South Carolina's gambling statute.  The Fourth Circuit has held that:

> The regulation of gambling enterprises lies at the heart of the state's police power.  Chi. & Alton R.R. Co. v. Tranbarger, 238 U.S. 67, 77 (1915).  The regulation of lotteries, betting, poker, and other games of chance touch all of the above aspects of the quality of life of state citizens.  See Posadas de Puerto Rico Assocs. v. Tourism Co. of Puerto Rico, 478 U.S. 328, 341 (1986) (state regulation of gambling is justified by substantial government interest in citizens' quality of life, including health, safety, and welfare).

Johnson v. Collins Entm't Co., Inc., 199 F.3d 710, 720 (4th Cir. 1999).  One would be "hard-pressed to identify any field of regulation about which there is broader or deeper consensus on the appropriateness of state control," Martin v. Stewart, 499 F.3d 360, 374 (4th Cir. 2007) (Wilkinson, J., dissenting), and it is well settled that "[g]ambling implicates no constitutionally protected rights." United States v. Edge Broad. Co., 509 U.S. 418, 426 (1993).

Plaintiffs "launch[ ] a *facial* attack on the state statutes *as a whole*." Martin, 499 F.3d at 367 (emphasis in original).  "Facial vagueness review is not common because ordinary canons of judicial restraint do not permit a party whose particular conduct is adequately described by a criminal statute 'to attack [the statute] because

5

the language would not give similar fair warning with respect to other conduct which might be within its broad and literal ambit.'" Schwartzmiller v. Gardner, 752 F.2d 1341, 1346 (9th Cir. 1984) (quoting Parker v. Levy, 417 U.S. 733, 756 (1974)).

> Striking down ordinances (or exceptions to the same) as facially void for vagueness is a disfavored judicial exercise. Nullification of a law in the abstract involves a far more aggressive use of judicial power than striking down a discrete and particularized application of it. Of course there will be hard cases under any law. And of course all the particular applications of any general standard will not be immediately apparent. That is no reason, however, for courts to scrap altogether the efforts of the legislative branch. It is preferable for courts to demonstrate restraint by entertaining challenges to applications of a law as those challenges arise.

Schleifer v. City of Charlottesville, 159 F.3d 843, 853 (4th Cir. 1998). A court may even assume for the sake of argument that certain applications of a law would be unconstitutional but still reject a facial challenge. Connection Distrib. Co. v. Holder, 557 F.3d 321, 342 (6th Cir. 2009).

For a "facial" challenge to a statute to succeed, the statute must be "invalid *in-toto* – and therefore incapable of valid application," i.e., "the complainant must demonstrate that the law is impermissibly vague in all of its applications." Village of Hoffman Est., 455 U.S. at 494 n.5, 497-98; see also United States v. Salerno, 481 U.S. 739, 745 (1987) (holding a facial challenge to a statute "must establish that no set of circumstances exists under which the Act would be valid."). While the Supreme Court has shown some reservation for this stringent standard, the Fourth Circuit recognizes that the current state of the law is "at the very least, a facial challenge cannot succeed if a 'statute has a plainly legitimate sweep.'" United States v. Comstock, 627 F.3d 513, 518 (4th Cir. 2010) (quoting Crawford v. Marion Cnty.

6

Election Bd., 553 U.S. 181, 202 (2008) and Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 (2008)). "A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." Village of Hoffman Est., 455 U.S. at 495.[3]

"In evaluating a facial challenge to a state law, a federal court must consider any limiting construction that a state court or enforcement agency has proffered." Kolender, 461 U.S. at 356 (quoting Village of Hoffman Est., 455 U.S. 489)). The Supreme Court of South Carolina has interpreted the statute according to its "ordinary meaning." Martin, 499 F.3d at 366; see State v. DeAngelis, 183 S.E.2d 906 (S.C. 1971); Ward v. West Oil Co., 692 S.E.2d 516, 519 (S.C. 2010).

Plaintiffs have not described the games sufficiently to establish that the statute is unconstitutionally vague. Furthermore, Martin admitted that he removed his games from South Carolina because he "knew" that they were prohibited by § 12-21-2710. Martin Dep. 7, 38. According to Martin, there was "no confusion" over the game's illegality under the statute. Id. Furthermore, the specific game that Lucky Strike discussed at the hearing before this court, the GT video game, contains a game of chance "similar to poker." See In Re: Eight GT Video Game Machs., Magis. Ct., (Order 11, 2006). Thus, plaintiffs have failed to demonstrate a genuine issue of material fact to establish a facial vagueness challenge to § 12-21-2710.

Furthermore, other federal district courts have found the term "games of chance" sufficiently clear to prohibit certain games. In 1948, the Western District of South Carolina determined that a pinball machine with a free play feature was a

---

[3] Thus, the court should address the games possessed by plaintiffs, not hypothetical games such as Monopoly, solitaire, or cards.

"game of chance," the term was not "unconstitutionally vague" as applied to the game, and therefore did not violate Due Process.  Holliday v. Governor, 335 U.S. 803, 924 (1948) (affirming 78 F.Supp. 918 (W.D.S.C. 1948)).  While the Supreme Court did not issue an opinion in Holliday, it summarily affirmed a three judge district court panel.  Id.; see also Durant v. Bennett, 54 F.2d 634, 636 (W.D.S.C. 1931).  Thus, at the very least, §12-21-2710 and -2712 have a "plainly legitimate sweep."  Comstock, 627 F.3d at 518 (quoting Crawford, 553 U.S. at 202 and Wash. State Grange, 552 U.S. at 449).  Summary judgment is, therefore, appropriate for defendants on this claim.

### B. Lack of Pre-Seizure Process

Plaintiffs claim that the enforcement of §12-21-2710 violates Ex Parte Young's prohibition of legislation that "preclude[s] a resort to the courts (either state or federal) for the purpose of testing its validity."  209 U.S. at 146.  The passenger rate act in Young subjected a violator "to a fine not exceeding $5,000 or imprisonment in the state prison for a period not exceeding five years, or both fine and imprisonment.  The sale of each ticket above the price permitted by the act would be a violation."  Id. at 145.  Thus, in order to test the validity of a rate, which could not be ascertained with any amount of certainty before hand, the carriers were required to subject themselves to the potential of massive fines and long terms of imprisonment.  The risk was simply too great, and thus, the court found that the lack of a pre-seizure hearing violated the plaintiff's rights to due process and equal protection of the laws.

Young differs from the case at hand for two reasons: (1) Young did not deal with seizure of property and (2) the meaning of the statute was too difficult to ascertain without a prior hearing. Young addressed a legal practice, transporting passengers, while § 12-21-2710 defines prohibited devices, which are *per se* contraband. State v. 192 Coin-Operated Video Game Machs., 525 S.E.2d 872, 879 (S.C. 2000). This distinction, along with others, makes this case more similar to Claero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663 (1974) discussed below.

Furthermore, Young prohibited an unspecified sum from being charged, which required a complex analysis. The Supreme Court of South Carolina has interpreted the statute at issue according to its "ordinary meaning," which as discussed above, is not impermissibly vague. See supra §A; DeAngelis, 183 S.E.2d 906; Ward, 692 S.E.2d at 519. In Sun Light Prepaid Phone, 600 S.E.2d 61, 64 (S.C. 2004), the Supreme Court of South Carolina held that a device "pertain[s] to [a] game[ ] of chance" because it contains an "element of chance"[4] and is not "part of a legitimate promotion to sell a product." See also Alexander v. Martin, 6 S.E.2d 20, 23 (S.C. 1939) (affirmed in Alexander v. Hunnicutt, 13 S.E.2d 630 (S.C. 1941)); State v. Four Video Slot Machs., 453 S.E.2d 896, 897 (S.C. 1995); Ward, 692 S.E.2d at 517 n.1, 521-22; DeAngelis, 183 S.E.2d at 908. Thus, "a man of reasonable intelligence is given fair notice of the machines proscribed," DeAngelis, 183 S.E.2d at 908, unlike the situation presented in Young. Therefore, plaintiffs have failed to

---

[4] The word "chance" has been used by Congress and found to be sufficiently clear. United States v. Korpan, 354 U.S. 271, 271, 273 n.2, 273-74 (1957) (though the primary "vagueness" was to the term "slot machine," the Court determined that although "skill may have been some part in playing" the game, the machines also "involved an element of chance sufficient to meet [the statutory] requirements.").

demonstrate that their due process and equal protection rights are violated by the statute.

Section 12-21-2710 is more similar to Claero and its progeny. Claero held that pre-seizure hearings were not required to seize property when: (1) the lack of a pre-seizure hearing fosters "the public interest in preventing continued illicit use of property and in enforcing criminal sanctions"; (2) "preseizure notice and hearing might frustrate the interests served by the statutes, since the property seized…will often be of a sort that could be removed to another jurisdiction, destroyed, or concealed if advance warning of confiscation were given"; and (3) "seizure is not initiated by self interested private parties." 416 U.S. at 679.

First, seizure of "games of chance" furthers the public interest in preventing gambling, in which the state has a "substantial" interest to protect its citizens' "health, safety and welfare." Posadas de Puerto Rico, 478 U.S. at 341. As discussed above, "[t]here are few decisions more central to state authority than whether to allow legalized gambling, how extensively, and under what terms." Martin, 499 F.3d at 371. Second, pre-seizure notice and hearing would likely frustrate the interest served in the statute because "video games may be manipulated" allowing the owner to eliminate the element of chance from the video program and thereby transform a formerly offending game into an apparently legal one. Allendale Cnty. Sherriff's Office v. Two Chess Challenge II, 606 S.E.2d 471, 474 (S.C. 2004). Additionally, the games are transportable, and thus may be removed to another jurisdiction and switched. The issue at hand is even more problematic from the case presented in Claero because the offending games may be tampered with or hidden and exchanged

with a non-violating game with much less difficulty than the yacht in Claero.  Finally, seizure is not initiated by private individuals, rather by SLED.

The result in Claero is clearly not foreclosed from the Young legal theory, as that in the next Court session after Young was decided, the same Court found an absence of pre-seizure hearings constitutionally acceptable when the state had a "duty to protect and guard" its citizens from potentially harmful food.  N. Amer. Cold Storage Co. v. City of Chi., 211 U.S. 306, 315 (1908); see also United States v. One 1971 Mercedes Benz 2-Door Coupe, 542 F.2d 912 (4th Cir. 1976) (holding probable cause is sufficient to seize cars possessing counterfeit currency so long as a post-seizure hearing is available); Coffin Bros. & Co. v. Bennett, 277 U.S. 29, 30, 31 (1928) (holding that in order to forestall bank failures, seizure of assets of stockholder's funds who fail to pay an assessment is permitted without pre-seizure hearing); Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594 (1950) (holding that where property rights are concerned, due process does not require a pre-seizure judicial hearing regarding misbranded drugs); Phillips v. Comm'n, 283 U.S. 589 (1931) (holding that a summary remedy for enforcing tax liability against transferee of taxpayer's property does not violate due process).  The state clearly has a duty to protect its citizens in the context of gambling, as discussed previously.

"Where only property rights are involved, mere postponement of judicial inquiry is not denial of due process, if opportunity given for ultimate judicial determination of liability is adequate."  Phillips, 283 U.S. at 596-97.  Plaintiffs agree that sufficient notice and adequate opportunity to contest forfeiture *after* the seizure of the property is available.  See Mitchell v. W.T. Grant Co., 416 U.S. 600 (1974).

As in the cases string-cited above, probable cause is required for the seizure of the property, imprisonment and fines are not levied until a hearing is made available, and a post-seizure method to contest the validity of the seizure is available. S.C. Code Ann. §§ 12-21-2710, -2712; see Two Chess Challenge II, 606 S.E.2d at 474. While individuals whose games have been seized do not always contest the seizure, this does not negate the sufficiency of an *available* post-seizure hearing.

Furthermore, plaintiffs have failed to plead sufficient facts to establish that their rights to equal protection are violated by lack of a pre-seizure hearing due to the fact that numerous substances which are contraband per se are not entitled to a pre-seizure hearing. They have failed to show that other similarly situated individuals are given a pre-seizure hearing. Plaintiffs have failed to show that there is a genuine issue of material fact in dispute which would support their claims. Thus, summary judgment is appropriate for defendants.

## IV.   CONCLUSION

For the foregoing reasons, this court **GRANTS** defendants' motion for summary judgment and **DENIES** plaintiffs' motion for partial summary judgment.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**CHIEF UNITED STATES DISTRICT JUDGE**

**March 31, 2011**
**Charleston, South Carolina**